IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT          :
                              :       May 18, 2021
                              :
COUNTY OF NEW HAVEN           :       **FILED UNDER SEAL**

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Martin Vega, Jr., being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND OF AFFIANT**

1. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since April 2002. I have received basic criminal investigator training at the USPIS Training Academy in Potomac, Maryland, and I have received extensive additional training in the investigation of fraud and other financial crimes, including violations of federal statutes such as 18 U.S.C. § 641, Theft of Government Property/Money, 18 U.S.C. § 1341, Mail Fraud, and 18 U.S.C. § 1001, False Statements. My law enforcement training and experience includes the preparation, presentation and service of criminal complaints, arrest warrants, and search warrants. I conduct surveillance, collect and review digital, financial, and other types of evidence, interview witnesses, subjects and targets, work with federal, state, and local law enforcement officers, execute search warrants and make arrests. I have initiated and assisted in numerous investigations involving fraud and other financial crimes. These investigations have resulted in the identification, arrest and conviction of numerous suspects.

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to

1

conduct investigations of and to make arrests for federal felony offenses. I am an investigator responsible for the ongoing investigation of **JACOB DEUTSCH** and **ARON DEUTSCH**.

3. I make this affidavit in support of a Criminal Complaint and Arrest Warrants charging **JACOB DEUTSCH**, and **ARON DEUTSCH**, residents of Brooklyn, New York, for violations of Title 18, United States Code, Section 1341 (Mail Fraud), Section 1343 (Wire Fraud), Section 1349 (Conspiracy to Commit Wire and Mail Fraud), and Section 1014 (False Statements) (collectively, the "TARGET OFFENSES").

4. The statements contained in this affidavit are based in part on my personal knowledge and information provided by other members of law enforcement, publicly available records, other investigative materials which I have reviewed, as well as my training and experience as a law enforcement officer. I have not included each and every fact known to me of the investigation; rather, I have submitted sufficient information to establish probable cause for the requested criminal complaint and arrest warrants.

5. Based on the facts set forth below, I believe there is probable cause to believe and I do believe that, from approximately June 2018, and continuing through at least August 2018, **JACOB DEUTSCH** ("JACOB") and **ARON DEUTSCH** ("ARON") committed the TARGET OFFENSES in the District of Connecticut.

## RELEVANT PERSONS AND ENTITIES

6. At all times relevant to the TARGET OFFENSES, JACOB and ARON worked at B H Property Management, LLC ("BHPM"), a property management company that manages several multifamily housing properties located in Hartford, Connecticut. JACOB was responsible for the day-to-day operations of BHPM. ARON coordinated maintenance and construction activities for the multifamily housing properties managed by BHPM.

7. In connection with his work for BHPM, JACOB used the email address jdeutsch@bhpm.us.

8. Emails sent or received from the domain bhpm.us—including emails to/from jdeutsch@bhpm.us—are stored on Microsoft servers. According to publicly available information, servers used by Microsoft to store emails are not located in Connecticut.

9. According to publicly available filings with the Office of Secretary of the State of Connecticut, from November 2016 to December 8, 2017, JACOB and ARON were members of BHPM. Thereafter, Abraham Deutsch was listed as the sole member.

10. 16 53 Evergreen Avenue LLC ("Evergreen LLC") was a limited liability company organized with the Secretary of the State of Connecticut on or about April 5, 2017, for the purpose of acquiring 16 Evergreen Avenue, a 24-unit multifamily housing property, and 53 Evergreen Avenue, a 12-unit multifamily housing property, both in Hartford, Connecticut. In filings with the Secretary of the State of Connecticut, Evergreen LLC provided jdeutsch@bhpm.us as the entity email address. According to publicly available filings, since its inception, Abraham Deutsch has been and is a member of Evergreen LLC.

11. In or about April 2017, Evergreen LLC acquired 16 Evergreen Avenue for $1,224,000. It financed the acquisition using seller financing of $624,960 and a second mortgage for $420,738. On the same day, Evergreen LLC acquired 53 Evergreen Avenue for $612,000 using seller financing of $288,960 and a second mortgage for $242,388.

12. 16 Evergreen Avenue and 53 Evergreen Avenue were managed by BHPM.

### BACKGROUND ON FREDDIE MAC'S SBL PROGRAM AND CBRE

13. The Federal Home Loan Mortgage Corporation, commonly known as Freddie Mac, was a government-sponsored enterprise ("GSE") in the housing finance market. Freddie Mac was

a private corporation established by Congress to provide stability in and increase the liquidity of the residential mortgage market, and to help increase the availability of mortgage credit to low- and moderate-income families in underserved markets. As part of this mission, Freddie Mac provided a secondary market for loans secured by single family and multifamily residential mortgages.

14. Freddie Mac's Small Balance Loan ("SBL") program provided a secondary market for loans secured by mortgages on multifamily housing properties.

15. To facilitate its purchase of SBL mortgages, Freddie Mac developed a network of approved mortgage lenders. Approved lenders underwrote SBL program mortgages and then immediately sold those mortgages to Freddie Mac.

16. Freddie Mac's SBL program placed limits on loan amounts based on certain loan to value ("LTV") and debt service coverage ratio ("DSCR") requirements, which varied by market.

17. The DSCR for a property was a ratio of the property's income to its debt obligations and was an indicator of whether a property could meet its debt obligations based on the income it generated. In terms specific to a multifamily property borrower, the DSCR considers net operating income of the borrower—whose source of income includes rent payments from tenants of that multifamily property—divided by the annual debt service from the contemplated loan. A DSCR of 1x means that the expected net operating income from a borrower exactly covers the debt service that will be paid by the borrower to the lender; a DSCR above 1x means that the expected operating income from a borrower is greater than the debt service that will be paid by the borrower to the lender. Freddie Mac relied on the DSCR in determining whether and at what amount it would purchase a loan issued by an approved lender.

18. The LTV ratio is the mortgage amount divided by the appraised property value. The higher the appraised value of the property, the more money a borrower can borrow against that value at a set LTV ratio. The appraised value of a multifamily housing property is based on many factors including the current tenant occupancy and net monthly income generated by rental payments from those tenants. Freddie Mac relied on the LTV to assess the lending risk and determine whether and at what amount it would purchase a loan issued by an approved lender.

19. CBRE Capital Markets, Inc. ("CBRE") was an indirect wholly owned subsidiary of CBRE Group, Inc., which provided mortgage origination and mortgage servicing to customers. CBRE was a Freddie Mac-approved SBL lender and therefore was required to comply with various eligibility criteria and to originate loans in accordance with the Freddie Mac's SBL program requirements. CBRE is a "financial institution" as defined under 18 U.S.C. § 20.

20. As part of its SBL application process, Freddie Mac required seller/servicers such as CBRE to submit a rent roll as part of its underwriting package. A rent roll was a document listing, among other things: (1) the unit number; (2) unit type or design (e.g., 1BR, 2BR); (3) tenant's name; (4) monthly contract rent; (5) occupancy status by unit; (6) lease commencement and expiration dates; and (7) amount of security deposit held. The details on the rent roll allow calculation of the total monthly gross potential rental income generated by the property as of the date of the rent roll.

21. In the Hartford-area market, the Freddie Mac SBL program usually capped loan amounts at 80% LTV and required a minimum 1.25x DSCR. In addition, for an SBL loan to be eligible for purchase by Freddie Mac, the property securing it must have a 90% stabilized average physical occupancy for the three-month period prior to the underwriting. However, a property with fewer than 30 units may be considered stabilized at a minimum of 85% physical occupancy for the

trailing three-month period if: (i) the acquiring sponsorship and management team is more experienced than the current owner; (ii) the appraised occupancy or rents for the property are materially higher than current occupancy rents; (iii) the property has not experienced volatile historical occupancy swings; and (iv) the property does not have a history of serious crime.

22. Freddie Mac relied upon the truth and accuracy of all representations, warranties, statements, certificates and other information furnished to Freddie Mac by an approved lender such as CBRE, regardless of whether any such documents were prepared by the approved lender or whether the approved lender knew or had reason to know the accuracy of their contents.

### FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

23. As described in greater detail below, from at least in or about June 2018, until in or about August 2018, JACOB and ARON conspired to defraud CBRE and Freddie Mac as follows:

    a. JACOB and ARON induced CBRE to issue a mortgage loan to Evergreen LLC to refinance the purchase of 16 Evergreen Avenue and 53 Evergreen Avenue, and to induce Freddie Mac to purchase this mortgage loan from CBRE based on materially false and fraudulent representations regarding the occupancy of and income generated by 16 Evergreen Avenue, which loan CBRE would not have underwritten and Freddie Mac would not have purchased.

    b. JACOB and ARON denied CBRE and Freddie Mac the right to control their assets by using such false and fraudulent representations to deprive them of economically valuable information relevant to the decision of whether to underwrite and purchase a mortgage loan to Evergreen LLC.

24. As part of one Freddie Mac SBL application to refinance 16 Evergreen Avenue and 53 Evergreen Avenue, JACOB submitted documents electronically using interstate wires on behalf

of Evergreen LLC to CBRE, which contained misrepresentations about 16 Evergreen Avenue's occupancy rate and net operating income. JACOB and ARON used various mechanisms to conceal from appraisers, CBRE, and Freddie Mac the actual occupancy of and income generated by 16 Evergreen Avenue.

25. On or about June 15, 2018, JACOB emailed CBRE Employee #1, whose identity is known to me, that there was a "new transection [sic]" for CBRE and attached a June 1, 2018 rent roll, an income and expense summary, and a summary of renovations for several buildings including 16 Evergreen Avenue.

26. Based on my review of documents obtained in the investigation and interviews of former BHPM employees, this June 1, 2018 rent roll and income and expense summary (which incorporated the gross scheduled rent from the June 1, 2018 rent roll) falsely represented that 16 Evergreen Avenue was 100% occupied, when in fact, not a single tenant resided there.

    a. A rent roll provided by BHPM Employee #1, whose identity is known to me and who worked at BHPM as a leasing agent from May 2018 through May 2019, confirmed that no tenants occupied or paid rent for the 24 units at 16 Evergreen Avenue as of June 1, 2018.

    b. A review of actual leases provided by BHPM Employee #1, confirms that none of the tenants listed on the June 1, 2018 rent roll for 16 Evergreen Avenue lived at 16 Evergreen Avenue in June 2018.

    c. According to BHPM Employee #2, whose identity is known to me and who worked as a receptionist for BHPM from March 2018 through June 2018, and as a leasing agent at BHPM until February 2019, no tenants began to occupy 16 Evergreen Avenue until mid-July 2018.

27. On or about June 15, 2018, CBRE Employee #1 emailed JACOB a preliminary loan amount for 16 Evergreen Avenue and 53 Evergreen Avenue of $2,040,000, which assumed an appraised value of $2,573,000 for the two buildings, based on a net operating income of $212,306, resulting in a 79.28% LTV. CBRE's net operating income assumption was derived from the fraudulent gross scheduled rent set forth on the June 1, 2018 rent roll and also listed in the income and expense summary supplied by JACOB to CBRE.

28. On or about June 18, 2018, CBRE Employee #2 emailed JACOB a due diligence list for 16 Evergreen Avenue and 53 Evergreen Avenue asking for, among other things, "Certified Rent Roll" for April, May, and June 2018, and financial statements for 2016, 2017, and 2018-June.

29. In response to CBRE's due diligence request, on or about June 22, 2018, JACOB emailed CBRE Employee #1 16 Evergreen Avenue financials for 2016, 2017, 2018, and a 2019 Pro Forma. At a minimum, the financials for 2018 were false, as the building was vacant for a portion of 2018, and by December 2018 was at most 50% occupied.

30. On or about June 26, 2018, CBRE Employee #2 emailed JACOB asking for May, June, and July 2018 rent rolls, a copy of tenant leases, and financial statements for 16 Evergreen Avenue. CBRE Employee #2 stated that rent rolls were needed before the upcoming property inspection.

31. In response, on or about June 26, 2018, JACOB emailed CBRE Employee #2 fraudulent rent rolls for 16 Evergreen Avenue as of May 2018 and June 1, 2018, which falsely represented that 16 Evergreen Avenue was 100% occupied during those two months, and which also included false lease start and end dates for the fake tenants. In truth, 16 Evergreen Avenue was 100% vacant during the months of May and June 2018.

32. In response to CBRE, on or about June 27, 2018, JACOB emailed CBRE Employee #2 fake leases for all apartments at 16 Evergreen Avenue to match the fraudulent rent roll JACOB had sent the day before. Each fake lease contained an electronic signature for the fake tenant, and was electronically signed on behalf of the landlord, Evergreen LLC and Abraham Deutsch, "Aron Deutsch."

33. On or about June 28, 2018, CBRE performed a physical inspection of 16 Evergreen Avenue. On or about July 2, 2018, Freddie Mac performed a physical inspection of 16 Evergreen Avenue. Both inspections involved entering rental units at 16 Evergreen Avenue.

34. According to BHPM Employee #3, whose identity is known to me and who worked as a property manager at BHPM from January 2018 through January 2019, ARON instructed BHPM Employee #3 to stage apartments at 16 Evergreen Avenue with furniture. BHPM Employee #3 stated that the purpose of staging the apartments was to make it appear to inspectors that apartments were occupied when, in fact, they were vacant.

35. According to BHPM Employee #1, ARON asked some BHPM employees to bring their own clothes into various apartments at 16 Evergreen Avenue to make the apartments look or appear "lived in." According to BHPM Employee #1, ARON also asked some BHPM employees to act as tenants during inspections of 16 Evergreen Avenue.

36. On or about July 9, 2018, Freddie Mac Employee #1 emailed CBRE stating that, "During my inspections, I noted something that was off. For 16 Evergreen, I have concerns about 2 of the units inspected. They looked like they were staged and the tenants were just there to make it look like someone lived there. Please make sure that the Lease Audit include units 201, 203 and 303 from 16 Evergreen." In reply, CBRE Employee #1 stated that CBRE would review Freddie Mac's questions but that CBRE had not made the same conclusions.

37. On or about July 16, 2018, CBRE Employee #2 emailed Freddie Mac Employee #1 stating, "I spoke to the client about your comments below. He explained that some of the units were furnished after the gut renovation to help with lease up. This was a onetime thing and they used the same furniture, so this may be why some of the units looked similar. We viewed these units during our walk through and have the leases, we will include them in our lease audit."

38. On or about July 16, 2018, JACOB emailed CBRE Employee #2 a certification electronically signed by Abraham Deutsch, the listed Borrower Principal for the loan sought by Evergreen LLC, that the operating financial statements and rent rolls provided for 16 Evergreen Avenue and 53 Evergreen Avenue were "complete and accurate representations." JACOB knew this to be false.

39. On or about July 18, 2018, Freddie Mac Employee #1 emailed CBRE Employee #1 asking for the current rent roll that CBRE is using for underwriting. That same day, CBRE Employee #2 emailed Freddie Mac Employee #1 the June 1, 2018 rent roll for 16 Evergreen Avenue and 53 Evergreen Avenue, stating that it was the "same rent roll that was used during the inspection." This rent roll was the same fraudulent rent roll JACOB emailed to CBRE on June 26, 2018.

40. On or about July 19, 2018, Freddie Mac Employee #1 emailed CBRE letting them know that he believed BHPM was making misrepresentations about 16 Evergreen Avenue's occupancy and that "Freddie Mac is declining to pursue the deal . . . ." Later that day, CBRE Employee #1 replied, "The client looks forward to talking with you all and is really upset of these accusations. It's an aggressive step to make these conclusions without understanding all the information . . . . The property is 100% occupied."

41. According to BHPM Employee #4, whose identity is known to me and who worked at BHPM as a property manager from July 2018 through April 2019, JACOB ordered her to enter fraudulent information into BHPM's property management software, AppFolio, for 16 Evergreen Avenue. BHPM Employee #4 was given a document that contained fake tenant names, and fake move-in dates and lease information, and entered this false information into AppFolio for 16 Evergreen Avenue. ARON checked in on BHPM Employee #4's progress in entering the information. When finished, BHPM Employee #4 printed the false documents for 16 Evergreen Avenue from AppFolio and handed them to JACOB. Several BHPM employees worked on this task.

42. On or about July 19, 2018, in response to Freddie Mac's concerns, JACOB emailed CBRE Employee #1 a fraudulent income register for May, June, and July 2018 purporting to show rental payments for the tenants listed on the fraudulent rent rolls previously provided; a July 19, 2018 rent roll for 16 Evergreen Avenue; and a letter from BHPM's marketing department which falsely stated that 16 Evergreen Avenue was "100 percent occupied at this time."

43. The income register for May, June, and July 2018, and the July 19, 2018 rent roll for 16 Evergreen Avenue sent by JACOB to CBRE Employee #1 was generated from AppFolio. The rental payments reflected in the income register were entered into AppFolio on July 19, 2018 by BHPM Employee #1, BHPM Employee #3, and BHPM Employee #4.

44. On or about July 19, 2018, CBRE Employee #1 forwarded JACOB's email to Freddie Mac, stating "Please see enclosed the income register for [16 Evergreen Avenue] May / June / July there are no vacant apartments."

45. On or about July 20, 2018, Freddie Mac emailed CBRE Employee #1 the following: "We appreciate the responses and considered the supplemental information provided.

Unfortunately, the previous conclusion remains unchanged—Freddie Mac is electing not to proceed with these loans. . . . The threshold is high for reconsideration. The additional evidence would have to include but not be limited to: full property lease audit, T3 bank statements with corresponding rent deposits (not borrower generated), reinspection (w/ tenant conversations) and tenant billing details for units in question (i.e. utilities bills dated prior to inspection with tenant's name)."

46. In response to Freddie Mac's email and to induce Freddie Mac to purchase the loan from CBRE:

   a. On or about July 23, 2018, JACOB emailed CBRE a "Receivables Activity" report, printed from AppFolio on July 23, 2018, for 16 Evergreen Avenue purporting to show rent payments received from the fake tenants listed on the fraudulent 16 Evergreen Avenue rent roll.

   b. On or about July 23, 2018, JACOB emailed CBRE doctored electric bills, and on or about July 24 and 25, 2018, JACOB emailed CBRE doctored gas bills, in the name of fake tenants listed on the fraudulent 16 Evergreen Avenue rent roll.

   c. On or about July 24, 2018, JACOB emailed CBRE pictures of doctored mail addressed to the fake tenants on the fraudulent 16 Evergreen Avenue rent roll. JACOB stated, "was not easy but got this tenets [sic] to cooperate to show is [sic] their recent mail I hope this helps the verification process".

   d. On or about July 25, 2018, JACOB emailed CBRE pictures of (i) money orders purporting to reflect rent payments from tenants of 16 Evergreen Avenue as proof of payment of rent; and (ii) the stamped envelopes the

money orders were sent to the BHPM offices in. In truth, money orders were purchased and filled out by BHPM employees at the direction of ARON. In addition, and based on my review of postal records and subpoenaed credit card records, one money order purporting to be from the fake tenant listed as residing at Unit 307 was purchased using a credit card registered to Rainwood, LLC, a company owned by ARON. The money orders were then sent through the mail to BHPM offices to make it appear as though tenants were remitting those payments.

e. On or about July 25, 2018, JACOB also included in this email pictures of (i) cashier's checks purporting to reflect rent payments from tenants of 16 Evergreen Avenue as proof of payment of rent; and (ii) the stamped envelopes the cashier's checks were sent to the BHPM offices in. In truth, ARON purchased both cashier's checks, BHPM employees filled out the envelopes, and cashier's checks were then sent through the mail to BHPM offices to make it appear as though tenants were remitting those payments.

47. On or about July 26, 2018, a CBRE employee emailed CBRE Employee #1 and other CBRE employees that they "really need to have 100% of what [Freddie Mac] requested to get this over the finish line." On or about July 30, 2018, CBRE Employee #1 replied, "We have gas bills loaded, we have copies of mail loaded, and we have cashier checks and Money orders or cash payments received by all tenants. . . . Again I will get with the client but we have many forms of address here." On or about July 31, 2018, a CBRE employee replied, "we reviewed all the additional information . . . . CBRE is comfortable with the support provided and I will be drafting an email to [Freddie Mac] today."

48.     On or about August 1, 2018, the lawyer for Evergreen LLC and Abraham Deutsch emailed CBRE Employee #1 and others at CBRE the following: "My client has gone above and beyond in terms of responding to the issues and questions raised by Freddie relative to certain of the properties. The allegations made by Freddie were very serious and my client has strenuously denied them and provided information and documentation to refute those allegations. . . . [W]e respectfully request that CBRE do everything it can to push Freddie to promptly complete its review of all of the audit materials my client has submitted and move these various loans to closing (on the original schedule) by the third week of August."

49.     On August 6, 2018, CBRE and Freddie Mac performed another inspection of 16 Evergreen Avenue.

50.     Prior to the August 6, 2018 inspection, on August 1, 2018, JACOB's credit card for an account owned by BHPM was used to pay a furniture stager. According to BHPM Employee #1, JACOB and ARON hired a stager in August 2018 and recalls that furniture from a stager was used to stage three apartments at 16 Evergreen Avenue in August 2018, including specifically Units 201 and 204. ARON asked BHPM Employee #1 to bring in clothes to make apartments at 16 Evergreen Avenue look lived-in. BHPM Employee #1 specifically recalls bringing her clothes into Unit 201. Units 201 and 204 were among the units inspected on August 6, 2018.

51.     Based on the numerous misrepresentations made by JACOB, on or about August 23, 2018, CBRE underwrote a Freddie Mac SBL loan for $2,178,000 secured by 16 Evergreen Avenue and 53 Evergreen Avenue, and then immediately sold that loan to Freddie Mac at closing.

## CONCLUSION

52.     As set forth above, there is probable cause to believe, and I do believe, that from in or about June 2018 to in or about August 2018, in the District of Connecticut and elsewhere,

**JACOB DEUTSCH** and **ARON DEUTSCH** have committed the TARGET OFFENSES. Accordingly, I respectfully request the issuance of the specified criminal complaint and arrest warrants.

MARTIN VEGA, JR.
POSTAL INSPECTOR

Attested to by the applicant over the telephone pursuant to Fed. R. Crim. P. 4.1 on May 18, 2021.

HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE